UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Securities and Exchange Commission, | ) | CASE NO. 20 CV 469 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| Vs. | ) | |
| | ) | |
| Jason Allan Arthur, at al., | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

This matter is before the Court upon Defendant Jason Allan Arthur's Motion to Dismiss, or in the Alternative, Motion for a More Definite Statement (Doc. 11) and Defendant, Christopher Joseph Bongiorno's Motion to Dismiss (Doc. 18).  In that same motion, defendant alternatively seeks a more definite statement.  This is a securities fraud case.  For the reasons that follow, the motions to dismiss are GRANTED and the motions for a more definite statement are MOOT.  Counts two and three are DISMISSED and count one remains pending.

**FACTS**

For purposes of ruling on the pending motions, the facts in the complaint are presumed

1

true.  Plaintiff Securities and Exchange Commission ("SEC") brings this action against defendants Christopher Joseph Bongiorno and Jason Allan Arthur alleging wrongdoing in connection with the sale of securities.

In approximately September 2015, a mutual acquaintance introduced Arthur to Paul Spivak, the CEO of US Lighting Group, Inc. ("USLG").  USLG's stock is traded on an over-the-counter exchange.  When Arthur met Spivak, Arthur introduced himself using the fictitious name "Jim Gates."  Arthur encouraged Spivak to research Gates's credentials, including FINRA's BrokerCheck application.  Spivak did so and located an entry for Jim Gates, showing that Gates is licensed to work in the securities industry.  USLG then hired Arthur to solicit investors.

Arthur, in turn, recruited Bongiorno to solicit investors on behalf of USLG.  Bongiorno met with Spivak and introduced himself using the fictitious name John Powers.  Like Arthur, Bongiorno encouraged Spivak to check BrokerCheck to confirm that he is properly licensed.

Arthur and Bongiorno used leads to cold call potential investors.  Both introduced themselves using their fictitious names and promoted the value of investing in USLG.  If an investor showed interest, defendants sent subscription agreements and instructed the investor to return the subscription agreement and investment funds directly to USLG.  In return for obtaining investments funds, USLG paid Arthur and Bongiorno commissions of approximately 40% to 50% of investor proceeds.

On one occasion, Bongiorno cold called an investor using the name John Powers. Bongiorno informed the investor that the value of USLG shares was about to increase.  The investor purchased shares.  Similarly, Arthur contacted an investor in Texas using the name Jim Gates. Arthur informed the investor that USLG manufactured long-lasting light bulbs and that

the company was planning to expand. Arthur further informed the investor that USLG paid Arthur a flat salary and that Arthur did not work on a commission basis. The investor purchased stock, but contrary to Arthur's representation, USLG paid Arthur a commission for the sale.

Plaintiff alleges that Arthur and Bongiorno engaged in a similar pattern with respect to Petroteq Energy, Inc. ("PQEFF"). PQEFF hired defendants to raise funds on its behalf and defendants cold called investors using fictitious names. PQEFF paid defendants a commission averaging 39% of investor proceeds.

On one occasion, Bongiorno contacted an investor in Wisconsin and informed the investor that PQEFF had developed "a cost-efficient process to extract oil from reclaimed oil sands." The investor purchased shares in PQEFF on two separate occasions.

Although generally defendants sent their investment funds directly to PQEFF, Bongiorno instructed two investors to send funds to North Star Assets, LLC, an entity he controlled. North Star Assets, LLC never transferred funds to PQEFF for the purchase of stock. Instead, funds were transferred to Arthur, as well as other entities controlled by Bongiorno. PQEFF has no record of having issued stock to either of these two investors.

As a result of these efforts, Arthur received nearly $1.2 million in commissions and Bongiorno received approximately $2.4 million.

Thereafter, plaintiff filed this lawsuit containing three claims for relief. Count one is a claim for violation of 15 U.S.C. §78o(a)(1), which prohibits the sale of securities by unregistered brokers or dealers. Counts two and three allege securities fraud in violation of 15 U.S.C. §77q(a) and 15 U.S.C. § 78j(b), respectively.

Defendants move to dismiss counts two and three and plaintiff opposes the motions. In

the alternative, defendants move for a more definite statement.  This aspect of the motions is also opposed.

### STANDARD OF REVIEW

"Dismissal is appropriate when a plaintiff fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). We assume the factual allegations in the complaint are true and construe the complaint in the light most favorable to the plaintiff."  *Comtide Holdings, LLC v. Booth Creek Management Corp.,* 2009 WL 1884445 (6th Cir. July 2, 2009) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir.2008) ).  In construing the complaint in the light most favorable to the non-moving party, "the court does not accept the bare assertion of legal conclusions as enough, nor does it accept as true unwarranted factual inferences." *Gritton v. Disponett,* 2009 WL 1505256 (6th Cir. May 27, 2009) (citing *In re Sofamor Danek Group, Inc*., 123 F.3d 394, 400 (6th Cir.1997).  As outlined by the Sixth Circuit:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests."*Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570.  A plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir.2012). Thus, *Twombly* and *Iqbal* require that the complaint contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face based on factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Twombly*, 550 U.S. at 570; *Iqbal,* 556 U.S. at 678.  The complaint must contain "more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555.

### ANALYSIS

Defendants argue that counts two and three are subject to the heightened pleading requirements contained in Fed.R.Civ.Pro. 9(b).  According to defendants, the complaint fails to satisfy these requirements.  Plaintiff responds that the complaint contains sufficient factual detail to satisfy the rule.

Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud."  It is well-settled in the Sixth Circuit that circumstances constituting fraud include "the time, place, and content of the alleged misrepresentation" as well as the identity of the individual making the representation.  *United States v. Ford Motor Credit Co.,* 532 F.3d 496, 504 (6th Cir. 2008) (internal quotations omitted); *Sogevalor, SA v. Penn Central Corp.,* 771 F. Supp. 890, 893 (S.D. Ohio 1991) (citing *Michaels Bldg. Co. v. Ameritrust Co., N.A.,* 848 F.2d 674, 680 (6th Cir. 1988)).  The plaintiff must also allege "the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud."  *Ford Motor Credit,* 532 F.3d at 504.  The purpose of this requirement is to "ensur[e] that a defendant is provided with at least the minimum degree of detail necessary to begin a competent defense."  *Id.*

#### Defendant Arthur

Defendant Arthur argues that the complaint fails to allege the "time, place, and contents" of the alleged misrepresentations.  In response, plaintiff cites to the following paragraphs in the complaint in support of its position that it satisfied Rule 9(b)'s heightened pleading requirements:

With respect to the "time" requirement, plaintiff points to the following allegation:

> 1. From at least September 2015 through at least November 2018...Arthur solicited numerous investors throughout the United States to purchase the securities of USLG and PQEFF.

According to plaintiff, the complaint contains more specific "month and years dates" for misrepresentations and omissions made for "several indicative examples of fraudulent conduct." Plaintiff points to Paragraphs 14-21 of the complaint. Those paragraphs, however, do not contain specific dates for any alleged misrepresentation. *See*, Paragraph 14 ("Beginning in or around September 2015, Arthur became involved with USLG after a mutual acquaintance introduced Arthur to USLG's CEO, Paul Spivak"); Paragraph 15 (noting general information regarding USLG); Paragraph 16 (alleging that Arthur had "previous experience in investor solicitations"); Paragraph 17 (alleging that when Arthur "first met" Spivak, he used a fictitious name); Paragraph 18 (alleging that Arthur led Spivak to believe that Arthur had the necessary licensing requirements); Paragraph 19-21 (alleging that Arthur encouraged Spivak to research the pseudonym Arthur provided, Spivak did so, and thereafter engaged Arthur to solicit investors)

Upon review, the Court finds that these allegations do not satisfy Rule 9(b)'s "time" requirement. Paragraph one alleges a three-year long time period, suggesting an ongoing and pervasive scheme. But, the allegations that plaintiff points to, which purportedly give more detailed allegations, do not contain any further time-specific facts. Plaintiff does point to paragraphs 30-33, which outline one example of Arthur cold-calling an investor on behalf of USLG. Those allegations, however, do not assist plaintiff. The complaint alleges only that "a Fort Worth investor" purchased USLG stock in or around September 2016 and October of 2016. The complaint does not contain any allegation (even generically) as to when Arthur made any

6

alleged misrepresentations to this unidentified investor. The Court notes that it is not suggesting that plaintiff need allege the *precise* time or even exact date that Arthur made telephone calls to investors, as Rule 9(b) does not require as much. As set forth above, however, the Sixth Circuit has repeatedly held that Rule 9(b) requires allegations directed at the "time" of the alleged fraud. Here, other than generically identifying a three-year time period during which defendants allegedly engaged in fraud, the complaint contains no allegation directed at the timing of any specific instance of alleged fraud.[1] This does not satisfy Rule 9(b). *See, e.g.*, *U.S. ex rel. Bledsoe v. Community Health Sytsm, Inc.*, 342 F.3d 634, 643 (6th Cir. 2003)("Notably, the amended complaint failed to set forth dates as to the various FCA violations...").

The Court further finds that the complaint falls far short of satisfying Rule 9(b) with regard to the sale of PQEFF stock. There are no allegations directed at misrepresentations made by Arthur in connection with PQEFF. Rather, the complaint generally alleges that Arthur operated by using a fictitious name, cold-called investors, and obtained funds. The one transaction identified in the complaint involving PQEFF is alleged to have been undertaken by defendant Bongiorno, not Arthur. For this additional reason, Rule 9(b) is not satisfied and dismissal is required.

### Defendant Bongiorno

Defendant Bongiorno makes nearly identical arguments in asking that the Court dismiss counts two and three. Upon review, the Court agrees. With respect to the sale of USLG stock, the complaint contains the same general allegations set forth above. The only arguable

---

[1] The complaint does identify when investors *purchased* stock, but those allegations are not directed at when defendant Arthur made any misrepresentations.

7

allegation that contains any specificity is set forth in Paragraph 29, which alleges as follows:

> For example, with respect to one investor from Mosinee, Wisconsin, Bongiorno, using the name John Powers, cold called the investor, told the investor about USLG, and said that the value of USLG shares was about to increase. Based on these and other representations, the investor purchased a total of 69,000 shares of USLG for a total investment of $23,500 made between November 14, 2016 and January 29, 2019.

This allegation, however, indicates that purchases were made by the investor over a more than two-year time period. Yet, the allegation is completely silent as to when Bongiorno contacted the investor. In addition, the allegation references "other representations," but it is not clear if the other representations were made during only one call, or whether plaintiff is alleging that Bongirono contacted the investor and made representations multiple times during this two-year period. The Court finds that the allegations with regard to the sale of USLG stock do not satisfy Rule 9(b)'s heightened pleading requirements.

The Court further finds that the allegations directed at Bongiorno's sale of PQEFF stock fail to satisfy Rule 9(b). In that regard, plaintiff alleges that

> ...Bongiorno told the Mosinee, Wisconsin, investor over the phone that PQEFF had developed a cost-efficient process to extract oil from reclaimed oil sands, which would translate into a high rate of return on an investment. Based on these and other representations, the investor purchased a total of $15,000 in PQEFF stock in two separate purchases made in or around January 2017 and November 2017.

(Compl. Par. 38).

Again, as set forth above with respect to Arthur, although the allegation identifies when the investor made the purchases, it does not identify (even generally) when Bongiorno is alleged to have made the representations. And, again, the two purchases referenced were made nearly a year apart and absent additional allegations directed at the timing of the contact(s) between Bongiorno and this unidentified investor, it is not clear whether plaintiff is alleging that

defendant made multiple contacts.

The complaint goes on to allege that Bongiorno customarily directed investors to send funds intended to purchase stock directly to PQEFF.  But, on two occasions, Bongiorno directed investors to send investment funds to North Star Assets, *i.e.*, an entity Bongiorno controlled.  No subsequent transfers were made to PQEFF and, therefore, the investors never acquired stock.  As to these two transfers, the complaint alleges as follows,

- Specifically, in or around November 28, 2017, pursuant to Bongiorno's direction, the Mosinee, Wisconsin investor sent a check in the amount of $5,000 to North Star Assets LLC.  (Compl. Par. 40).

- In or around December 7, 2017, pursuant to Bongiorno's direction, an investor from Oakley, California sent a check in the amount of $25,000 to North Star Assets LLC.  (Compl. Par. 41).

These allegations are not plead with particularity.  Although both identify when investors sent funds to North Star Assets LLC, neither allegation identifies when Bongiorno allegedly made any misrepresentations.  This is especially troubling with respect to the California investor.  This is the only allegation in the complaint directed at this investor.  It is not clear how Bongiorno is alleged to have "directed" the investor to remit funds, as there are no facts discussing any contact between Bongiorno and the California investor.  On the whole, the Court finds that the allegations fail to satisfy Rule 9(b)'s heightened pleading requirements.

### Remaining issues

Having concluded that dismissal is required, the Court need not reach defendants' arguments regarding materiality.  Nor need the Court address defendants' alternative request for a more definite statement.  Plaintiff asks that, should the Court find dismissal appropriate, it be granted leave to amend.  The Court does not grant leave to amend a complaint when the request

is filed in a brief in opposition.  The Court notes, however, that the pleading amendment deadline is December 31, 2020.  Prior to this date, leave to amend is not required.

### **CONCLUSION**

For the foregoing reasons, Defendant Jason Allan Arthur's Motion to Dismiss and Defendant Christopher Joseph Bongiorno's Motion to Dismiss are GRANTED.  The motions for a more definite statement are MOOT.  Counts two and three are DISMISSED and count one remains pending.

IT IS SO ORDERED.


                                           /s/ Patricia A. Gaughan
                                          PATRICIA A. GAUGHAN
                                          United States District Judge
Dated: 9/29/20                    Chief Judge