# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 1:20-cv-00469 |
| Plaintiff, | Judge J. Philip Calabrese |
| v. | Magistrate Judge William H. Baughman Jr. |
| CHRISTOPHER BONGIORNO, *et al.*, | |
| Defendants. | |

## **OPINION AND ORDER**

Defendants Jason Allan Arthur and Christopher Bongiorno move to dismiss Counts 2 and 3 of the amended complaint for failure to state a claim. For the following reasons, the Court **DENIES** both motions. (ECF No. 28; ECF No. 30.)

## STATEMENT OF FACTS

Taking the facts alleged in the complaint as true and construing them in Plaintiffs' favor, as the Court must on the motion before it, the Securities and Exchange Commission bases its claims on the following facts.

Neither Mr. Arthur nor Mr. Bongiorno, are licensed securities brokers or dealers. (ECF No. 24, ¶ 25, PageID #166.) The two used pseudonyms—Jim Gates (in the case of Mr. Arthur) and John Power (for Mr. Bongiorno)—to develop a scheme to solicit investors to purchase certain stocks. (*Id.*, ¶¶ 29–34, PageID #166–67.) Those pseudonyms, Jim Gates and John Power, are listed in public registries as licensed brokers. (*Id.*, ¶¶ 29 & 32.)

In 2016, Defendants, using their pseudonyms, contacted Paul Spivak, the CEO of US Lighting Group, Inc. to solicit their services to sell the company's stock. (*Id.*) By mid-2016, Defendants solicited and sold stock on behalf of USLG and an unrelated Canadian company, Petroteq Energy, Inc. (PQEFF), to prospective investors throughout the United States. (*Id.*, ¶ 15, PageID #164.)

Mr. Arthur and Mr. Bongiorno hired individuals through advertisements on Craigslist to solicit investors to sell USLG and PQEFF stock. (*Id.*, ¶¶ 21–23, PageID #165.) Along with their employees, they cold-called prospective investors and pitched USLG and PQEFF as investment opportunities. (*Id.*, ¶ 18, PageID #164.) Mr. Arthur and Mr. Bongiorno introduced themselves to prospective investors using their pseudonyms and at no time revealed their true identities. (*Id.*, ¶¶ 38–42, 55–63, PageID #168, 170–72.) On at least one occasion, Mr. Arthur falsely told an investor that USLG paid him a flat salary, instead of a commission for each stock sale he made. (*Id.*, ¶¶ 44, 52, PageID #168, 170.) When prospective investors expressed an interest in purchasing one of the securities, Mr. Arthur and Mr. Bongiorno sent the prospective investors subscription agreements and promotional materials and instructed them on how to finalize their investments. (*Id.*, ¶ 19, PageID #165.)

According to the amended complaint, Mr. Arthur and Mr. Bongiorno induced several investors from around the United States to invest varying amounts in USLG and PQEFF. (*See id.*, ¶¶ 39–50, 56–62, PageID #168–69, 170–71.) Typically, they instructed investors to send their funds directly to USLG and PQEFF. (*Id.*, ¶ 65, PageID #172.) On at least two occasions, however, Mr. Bongiorno directed investors

2

to send investment funds to North Star Assets LLC, an entity Mr. Bongiorno controls. (*Id.*, ¶¶ 65–69, PageID #172–73). Mr. Bongiorno allegedly misappropriated these funds for personal use. (*Id.*, ¶ 65, PageID #172.)

After each sale, Mr. Arthur and Mr. Bongiorno notified USLG or PQEFF to claim their commissions, which usually amounted to approximately 40–50% of investment proceeds from USLG and an average of 39% from PQEFF. (*Id.*, ¶¶ 20, 21, PageID #165.) When applicable, Mr. Arthur and Mr. Bongiorno paid a portion of their commissions to their employees by checks, wires, and interbank transfers. (*Id.*, ¶ 24, PageID #165.) During the relevant period, Mr. Arthur received transaction-based compensation from USLG and PQEFF of over $1.175 million, and Mr. Bongiorno received transaction-based compensation from USLG and PQEFF of over $2.3 million. (*Id.*, ¶ 5, PageID #162.)

## STATEMENT OF THE CASE

On February 28, 2020, the SEC sued Defendants, alleging that they violated Section 15(a)(1) of the Exchange Act by selling securities without a license (Count 1) and Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act by fraudulently selling securities to investors (Counts 2 and 3). (ECF No. 1.) Defendants each moved to dismiss Counts 2 and 3 based on the pleading standard of Rule 9(b) or, alternatively, sought a more definite statement. (ECF No. 11; ECF No. 18.) With respect to both Defendants, the Court ruled that the original complaint failed to plead with the specificity Rule 9(b) requires. (ECF No. 20, PageID #144–45.) The Court concluded its ruling by addressing Plaintiff's request for leave to amend raised in its

3

opposition to Defendants' motions to dismiss: "The Court does not grant leave to amend a complaint when the request is filed in a brief in opposition. The Court notes, however, that the pleading amendment deadline is December 31, 2020. Prior to this date, leave to amend is not required." (*Id.*, PageID #147–48.)

On October 28, 2020, Plaintiff amended its complaint. (ECF No. 24.) Defendants again separately moved to dismiss Counts 2 and 3 for failure to state a claim, arguing that the amended complaint does not meet Rule 9(b)'s heightened pleading standard. (ECF No. 28; ECF No. 30.)

## ANALYSIS

To withstand a motion to dismiss, Plaintiffs must allege facts that "state a claim to relief that is plausible on its face" and raise their "right to relief above the speculative level." *Cook v. Ohio Nat. Life Ins. Co.*, 961 F.3d 850, 855 (6th Cir. 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When analyzing a complaint, the Court construes factual allegations in the light most favorable to the plaintiff, accepts them as true, and draws all reasonable inferences in the plaintiff's favor. *Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015). But a complaint must offer more than "labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quotation omitted). Rule 8 of the Federal Rules of Civil Procedure, along with *Twombly* and *Iqbal*, require a plaintiff to "plead enough factual matter to raise a plausible inference of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (cleaned up). This

inference "depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Id.* (citations omitted). To survive a motion to dismiss, a complaint must "raise a right to relief above the speculative level" into the "realm of plausible liability." *Twombly*, 550 U.S. at 555.

Under Rule 9(b), a heightened pleading standard applies to Plaintiff's claims for fraud, which requires a party to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Generally, Rule 9(b) requires a plaintiff "(1) to specify the allegedly fraudulent statements; (2) identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent." *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012) (citation omitted). But "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Notably, the heightened pleading standards of the Private Securities Litigation Reform Act of 1995 do not apply to SEC enforcement actions. *See SEC v. Kornman*, 391 F. Supp. 2d 477, 494 (N.D. Tex. 2005).

When read in connection with Rule 8's notice requirement, "the purpose of Rule 9 is not to reintroduce formalities to pleading, but is instead to provide defendants with a more specific form of notice as to the particulars of their alleged misconduct." *United States ex rel. Bledsoe v. Community Health Sys., Inc.*, 501 F.3d 493, 503 (6th Cir. 2007). "So long as [the plaintiff] pleads sufficient detail—in terms of time, place and content, the nature of a defendant's fraudulent scheme, and the

5

injury resulting from the fraud—to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008).

## I. Motion to Dismiss

Section 17(a) of the Securities Act of 1933 makes it unlawful for any person, directly or indirectly, in the offer or sale of any securities:

> (1) to employ any device, scheme, or artifice to defraud, or
>
> (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
>
> (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q(a). Section 10(b) of the Exchange Act of 1934 makes it unlawful for any person, directly or indirectly:

> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement . . . , any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). And Rule 10b-5, promulgated under Section 10(b) of the Exchange Act, makes it unlawful for any person, directly or indirectly:

> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

6

  (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

  To establish a violation of Section 10(b), Rule 10b-5 or Section 17(a)(1), the SEC must show that Defendants engaged in (1) misrepresentations or omissions of material facts; (2) made in connection with the offer, sale or purchase of securities; (3) with scienter on the part of the defendants." *SEC v. George*, 426 F.3d 786, 792 (6th Cir. 2005) (cleaned up).

### II.A. Time, Place, and Manner

  Defendants argue that Plaintiff fails to allege with particularity (1) the time, place, and manner of Defendants' alleged misrepresentations, and (2) Defendants' misrepresentations or omissions of material fact.

### II.A.1. Mr. Arthur

  The amended complaint sufficiently alleges when, where, and how Mr. Arthur perpetrated the alleged scheme to defraud investors. It alleges that "in or around May 2016" in a conversation with Spivak, Mr. Arthur led Spivak to believe that he was Jim Gates, a licensed broker. (ECF No. 24, ¶ 29, PageID #166.) It further alleges that Mr. Arthur made similar and additional misrepresentations and omissions to investors throughout the United States during various times in 2016. (*Id.*, ¶ 38 ("summer of 2016"), ¶ 42 ("fall of 2016"), ¶ 48 ("August 2016"), PageID #168–69.) These time allegations in the amended complaint differ markedly from those in the original complaint, which did not provide nearly so much (or almost any) specificity regarding when the alleged conduct and representations at issue took place.

Further, as one of several examples, the amended complaint pleads that Mr. Arthur "falsely introduced himself as 'Jim Gates'" to an investor in Ocean City, New Jersey "and omitted that [he] was not a licensed broker or dealer and that Arthur would be paid for soliciting and securing the investment in USLG." (*Id.*, ¶¶ 39–41, PageID #168–69.) Contrary to Mr. Arthur's argument, the amended complaint meets the heightened pleading standard.

### II.A.2. Mr. Bongiorno

Similarly, Plaintiff alleges with particularity when, where, and how Mr. Bongiorno participated in the alleged scheme. The amended complaint pleads that "in or around September 2016," in a conversation with Spivak, Mr. Bongiorno led Spivak to believe that he was "John Powers," a licensed broker. (*Id.*, ¶ 32, PageID #167.) Further, the amended complaint alleges that Mr. Bongiorno made similar and additional misrepresentations and omissions to investors throughout the United States at various times in late 2016 (*id.*, ¶ 56 ("late 2016") & ¶ 61 ("November 2016"), PageID #170–71) and that Mr. Bongiorno made false statements to investors as part of a scheme to misappropriate funds in late 2017 (*id.*, ¶¶ 66, 67, PageID #172–73). For example, Plaintiff alleges that in late 2016, Bongiorno telephoned an investor in Marathon County, Wisconsin, used the pseudonym "John Powers," and solicited investment in USLG. (*Id.*, ¶¶ 57–59, PageID #170–71.)

In another example, the amended complaint alleges that Mr. Bongiorno misappropriated investor funds by instructing investors to send their funds to North Star Assets LLC, an entity Mr. Bongiorno controls. (*Id.*, ¶ 65, PageID #172.)

8

Particularly, it alleges that "on or about November 28, 2017," Mr. Bongiorno instructed an investor to make his check constituting his investment in PQEFF "payable to North Star," without disclosing that Mr. Bongiorno controlled North Star. (*Id.*, ¶ 66, PageID #172.)

\* \* \*

Defendants argue that Plaintiff fails to allege an injury to USLG, PQEFF, or the investors. But "unlike private litigants seeking damages, the Commission is not required to prove that any investor actually relied on the misrepresentations or that the misrepresentations caused any investor to lose money." *SEC v. Blavin*, 760 F.2d 706, 711 (6th Cir. 1985); *see also SEC v. Geswein*, 2 F. Supp. 3d 1074, 1088 (N.D. Ohio 2014). Accordingly, Plaintiff's complaint, which includes several examples of Defendants' alleged fraudulent conduct, pleads time, place, and manner with the particularity Rule 9(b) requires.

### II.B. Materiality

Plaintiffs sufficiently plead that the alleged misrepresentations and omissions of both Mr. Arthur and Mr. Bongiorno are material. A fact is material if a substantial likelihood exists that (1) a reasonable person would consider the fact important in making an investment decision, and (2) a reasonable investor would view the information as significantly altering the total mix of information. *Basic, Inc. v. Levinson*, 485 U.S. 224, 231–32 (1988). Here, there is no doubt that a reasonable investor would consider the misrepresentations and omissions alleged as important

9

in making his or her investment decisions and altering the total mix of information affecting those decisions.

### II.B.1. Mr. Arthur

The amended complaint primarily relies on two material misrepresentations and omissions Mr. Arthur allegedly made. First, it alleges that Mr. Arthur misrepresented his name as Jim Gates and omitted that, unlike Jim Gates, he was not licensed to engage in the securities business. (ECF No. 24, ¶¶ 28–29, 36, 38–39, 42, 48, 50, PageID #166–69.) Mr. Arthur's alleged misrepresentations and omissions regarding his identity are material for the simple and obvious reason that he passed himself off as licensed to do business when he was not. A reasonable investor would consider such information an important and material fact in making investment decisions. *See Saunwin Int'l Equities Fund LLC v. Donville Kent Asset Mgmt. Inc.*, No. CV 17-11585-FDS, 2018 WL 3543533, at *13–14 (D. Mass. July 20, 2018) (holding that the omission of the fact that the defendant was not licensed to engage in the securities business was material).

Second, the amended complaint alleges that Mr. Arthur misrepresented to at least one investor that USLG paid him a flat salary when, in fact, he received significant compensation on a commission basis. (*See* ECF No. 24, ¶¶ 41, 44, 47, 51–52, PageID #168–70.) The amended complaint alleges that Mr. Arthur "received transaction-based compensation or commissions for [his] solicitation activities, which generally amounted to approximately 40% to 50% of investment proceeds from USLG and an average of 39% from PQEFF." (*Id.*, ¶ 4, PageID #162.) A reasonable investor

10

would view these differences in compensation of the sort alleged as significantly altering the total mix of information and important to making investment decisions. *See SEC v. Alliance Leasing Corp.*, No. 98-CV-1810-J, 2000 WL 35612001, at *10 (S.D. Cal. Mar. 20, 2000), *aff'd*, 28 F. App'x 648 (9th Cir. 2002) ("We agree with the district court that the 30% commissions were so obviously important to an investor, that reasonable minds cannot differ on the question of materiality.") (internal quotation marks omitted); *SEC v. Lottonet Operating Corp.*, No. 1:17-CV-21033, 2017 WL 6949289, at *14 (S.D. Fla. Mar. 31, 2017) ("Any reasonable investor would want to know that Defendants were not, as Defendants represented, spending investor funds to develop the Company, but were instead using 35 percent of investors' money to pay sales agents for soliciting their investments.").

### II.B.2. Mr. Bongiorno

Like the allegations against Mr. Arthur, the amended complaint alleges several material misrepresentations and omissions by Mr. Bongiorno. First, Plaintiff alleges that Mr. Bongiorno lied to potential investors about his identity, claiming that he was John Powers and omitting the fact that he, himself, was not licensed to engage in the securities business. (ECF No. 24, ¶¶ 54, 56, 59–60, 61–63, PageID #170–72.)

Second, the amended complaint alleges that Mr. Bongiorno failed to inform investors that USLG and PQEFF paid him significant commissions. (*See id.*, ¶¶ 60, 63, PageID #171–72.) It pleads that Mr. Bongiorno "received transaction-based compensation or commissions for [his] solicitation activities, which generally amounted to approximately investment proceeds from USLG and an average of 39%

11

from PQEFF." (*Id.*, ¶¶ 4, 25, PageID #162, 166.) For the same reasons stated above, Mr. Bongiorno's misrepresentations and omission would significantly alter the total mix of information available to a reasonable investor that would affect his or her investment decisions.

Additionally, the amended complaint alleges that on at least two occasions, Mr. Bongiorno instructed investors to send money meant to purchase PQEFF securities to North Star, an entity he controlled, while failing to disclose that he intended to use those funds for his personal use. (*Id.*, ¶¶ 65–69, PageID 172–73.) It is "obvious that a reasonable investor would consider it important to know that his money would not be invested" in the company in which the security was offered, "but would instead be used for other purposes, such as to pay for" personal expenses. *SEC v. Smith*, No. C2-CV-04-739, 2005 WL 2373849, at *5 (S.D. Ohio Sept. 27, 2005).

\*    \*    \*

The amended complaint pleads that both Mr. Arthur and Mr. Bongiorno (1) were not licensed to sell securities; (2) intentionally used pseudonyms and cold-called prospective investors; (3) failed to inform the investors that they were niether licensed brokers/dealers nor affiliated with a licensed broker/dealer; (4) omitted or misstated their compensation arrangement; and (5) in the case of Mr. Bongiorno induced investors to send their investment funds to North Star. Considering these allegations in their totality, Plaintiff sufficiently pleads fraud, provides adequate notice to Defendants of its claims, and states claims that Defendants violated Section of 17(a) of the Securities Action and Section 10(b) of the Exchange Act.

## II. More Definite Statement

Rule 12(e) provides that a "party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Such a motion "must point out the defects complained of and the details desired." *Id.* Generally, courts disfavor motions for more definite statement. *Innovative Digital Equip., Inc. v. Quantum Tech., Inc.*, 597 F. Supp. 983, 989 (N.D. Ohio 1984).

Defendants argue that Plaintiff improperly pleaded that Defendants acted with more than one mental state. Indeed, Plaintiff pleaded that Defendants acted intentionally, recklessly, and negligently, but nothing prohibits Plaintiff from doing so, especially because each claim requires a different mental state. *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."). For this reason, and those stated above, Plaintiff need not provide a more definite statement.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' motions to dismiss for failure to state a claim.

**SO ORDERED.**

Dated: December 10, 2021

                J. Philip Calabrese
                United States District Judge
                Northern District of Ohio