UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | Case No. 1:20-cv-00469 |
| | ) | Judge J. Philip Calabrese |
| Plaintiff, | ) ) | |
| | ) | Magistrate Judge |
| v. | ) ) | William H. Baughman Jr. |
| CHRISTOPHER JOSEPH BONGIORNO and JASON ALLAN ARTHUR, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**OPINION AND ORDER**

Defendants Christopher Bongiorno and Jason Arthur move to stay this civil enforcement action pending the resolution of a related criminal case. (ECF No. 45.) Plaintiff, the Securities and Exchange Commission, opposes Defendants' motion. (ECF No. 47.) For the following reasons, the Court **DENIES** the motion to stay.

## BACKGROUND

In early 2020, the SEC sued Defendants, alleging violations of Section 15(a)(1) of the Exchange Act for selling securities without a license and Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act for fraudulently selling securities to investors. (ECF No. 24.) After denying Defendants' motions to dismiss the first amended complaint, the Court held a status conference in response to the SEC's motion to continue certain case management deadlines. (ECF No. 41; Minutes, Feb. 3, 2022.) During that status conference, Defendants represented that they intended to seek to stay this civil matter pending the resolution of criminal

proceedings in *United States v. Spivak, et al.*, No. 1:21-cr-491 (N.D. Ohio), over which the undersigned is also presiding. *Spivak* implicates some of the same individuals as this case, and some relevant facts in each overlap to a degree. At the Court's direction, Defendants and the SEC briefed the motion to stay. (ECF No. 45; ECF No. 46.) The Court ordered the United States to provide its position on the matter as well. In *Spivak*, in a filing on March 15, 2022 (No. 1:21-cv-491, ECF No. 108 (attached)), the United States noted the limited nature of the relationship between the two cases but represented that it intends to charge Mr. Bongiorno. Mr. Arthur is already a defendant in *Spivak*. Further, the United States represented that it has no present intention of intervening in this civil suit and has not identified prejudice to its prosecution that might result from a resolution of this motion to stay.

Defendants argue that "[a]s a result of the Indictment, [they] are now placed in the precarious, if not impossible, position of causing irreparable damage in their defense of both matters." (ECF No. 45, PageID #319.) They assert that being forced to invoke their Fifth Amendment privilege when answering the amended complaint will result in an "adverse inference in the civil matter." (*Id.*, PageID #320.) Further, they argue that, if they do not invoke the Fifth Amendment privilege, they will potentially incriminate themselves in the criminal matter and hinder their ability to cooperate in discovery in the civil case. (*Id.*, PageID #319–320.)

The SEC requests that the Court deny the motion to stay. (ECF No. 47.) It argues that the Fifth Amendment does not require the Court to grant Defendants' requested stay. (ECF No. 47, PageID #343.) Additionally, the SEC argues that delay

of the civil proceedings, especially given the history of this case, would prejudice it. (*Id.*, PageID # 345.) As to the invocation of Defendants' Fifth Amendment rights, the SEC argues that it is not unconstitutionally coercive for Defendants to choose whether to invoke the privilege notwithstanding the potential for adverse inferences in this case. (*Id.*, PageID #347.)

## ANALYSIS

"[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) (citations omitted). Incident to that inherent authority is the "broad discretion in determining whether to stay a civil action while a criminal action is pending." *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d. 611, 627 (6th Cir. 2014) (quoting *Chao v. Fleming*, 498 F. Supp. 2d 1034, 1037 (W.D. Mich. 2007)). However, "nothing in the Constitution requires a civil action to be stayed in the face of a pending or impending criminal indictment," and "there is no requirement that a civil proceeding be stayed pending the outcome of criminal proceedings." *Id.* (cleaned up).

While there is no precise test for determining whether to grant a stay due to a pending criminal proceeding, courts commonly consider six factors: (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the case, including whether the defendants have been indicted; (3) the private interests of the plaintiff in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of and the

3

burden on the defendants; (5) the interests of the courts; and (6) the public interest. *E.M.A. Nationwide*, 767 F.3d at 627. Additionally, courts consider "the extent to which the defendant's fifth amendment rights are implicated." *Id.*

"The most important factor is the balance of the hardships, but the district courts must also consider whether granting the stay will further the interest in economical use of judicial time and resources." *Id.* (cleaned up). As the parties seeking a stay, Defendants bear the burden "to show that there is a pressing need for delay." *Id.* at 627–28 (quoting *Ohio Env't Council v. United States Dist. Court, S. Dist.*, 565 F.2d 393, 396 (6th Cir. 1977)). Defendants must also establish "that neither the other party nor the public will suffer harm from entry of the order." *Ohio Env't Council*, 565 F.2d at 396.

### 1. Overlap of Issues

In weighing this element, the Court considers the similarities between the legal issues and subject matter such as the charges, fact issues, witnesses, and evidence. *See Chao*, 498 F. Supp. 2d at 1039. Without overlap, "there would be no danger in self-incrimination and no need for a stay." *Id.*

Defendants assert that the issues in the "criminal and civil matters directly overlap and are virtually identical." (ECF No. 45, PageID #321.) Defendants contend that both the *Spivak* superseding indictment and the amended complaint "allege similar, if not exactly the same purported facts concerning the stock at issue, the victims of the USLG ("U.S. Lighting Group") solicitation, and the monies sent to USLG in furtherance of consummating a purchase of stock." (*Id.*) Further,

4

Defendants assert that the legal claims and issues are substantially similar or the same. (*Id.*, PageID #322.)

The SEC does not dispute that there is overlap between this case and *Spivak*. (ECF No. 47, PageID #345.) But the allegations in this case involve more than just USLG. The amended complaint "alleges violations of the federal securities laws by Arthur and Bongiorno with respect to the securities of Petroteq Energy, Inc (PQEFF)," and the "criminal proceeding as currently pled does not concern Defendants' conduct relative to PQEFF." (*Id.*, PageID #346.)

Without question, this case overlaps with *Spivak* to the extent each involves sales of USLG stock. But the Court agrees that this civil action extends further and involves additional transactions that do not appear to be implicated in *Spivak*. Similarly, *Spivak* implicates individuals and conduct not at issue in this case. Therefore, this factor stands in equipoise and does not favor or counsel against a stay here.

### 2. Status of the Case

"[C]ourts generally do not stay proceedings in the absence of an indictment." *E.M.A. Nationwide*, 767 F.3d at 628. A stay is most appropriate where a party to the civil case has been indicted for the same conduct because (1) "the likelihood that a defendant may make incriminating statement is greatest after an indictment has issued; and (2) the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved due to Speedy Trial Act consideration." *Id.* (quoting *Trustees of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mechanical*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995)).

5

Mr. Arthur is a defendant in both the civil and criminal cases. At the moment, Mr. Bongiorno is a defendant in the civil case and listed as an unindicted co-conspirator in the criminal matter. (ECF No. 45, PageID #323; ECF No. 47, PageID #345.) However, the United States represents that it intends to pursue criminal charges against Mr. Bongiorno. Accordingly, this factor favors a stay. But the Court has no reason to believe that *Spivak* will be quickly resolved. The pace of that case, the amount of discovery involved, and the fact that the indictment has been superseded once already and new charges will be brought against Mr. Bongiorno and others erodes the force of the Speedy Trial Act considerations noted in the caselaw. Those considerations also make a stay here potentially quite lengthy—reducing the strength of this factor overall.

### 3. The SEC's Interests

The SEC argues that, because it enforces securities laws on behalf of the public, its interests and those of the public are intertwined in a civil-enforcement action. Because the Commission proceeds here as an interested litigant, the Court does not agree and analyzes these factors separately. Under this factor, the Court examines "the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay." *E.M.A. Nationwide*, 767 F.3d at 627.

The SEC argues that "additional delay of discovery and adjudication of this matter will substantially prejudice both the Commission and the defrauded investors the Commission's action is intended to protect." (*Id.*, PageID #349.) Defendants counter that the SEC "faces no burden" because both cases promote "the mission of

6

protecting investors and maintaining fair, orderly, and efficient markets." (ECF No. 45, PageID #324.)

This factor weighs against a stay. The SEC brought this action in early 2020, more than a year before the United States brought charges against Mr. Spivak and over eighteen months before it superseded the indictment to name Mr. Arthur as a defendant. This case has been pending for nearly two years, and the passage of time compromises the ability of the Commission to pursue its claims in a case that is more limited than the scope of the criminal case and likely to progress more quickly.

### 4. Defendants' Interests

When examining the private interests and burden of Defendants, it should come as no surprise that defending multiple actions simultaneously imposes substantial burdens on Defendants that might induce them to resolve one or both cases for reasons having little to do with the merits. The Court notes that the SEC could use civil discovery to obtain evidence and information for use in the criminal prosecution, circumventing the protections of the Fifth Amendment. *See Chao*, 498 F. Supp. 2d at 1039.

### 5. Interests of the Court

Another consideration involves the Court's "docket management and the expeditious resolution of cases" when determining whether a stay is appropriate. *Id.* at 1040. Defendants assert that "staying the civil matter in favor of the criminal case could ultimately reduce or eliminate discovery or result in a settlement of this case in the event of a conviction." (ECF No. 45, PageID #324) The SEC does not take a position on the interests of the Court.

7

In the Court's view, its interests weigh against a stay. Managing both cases at the same time on parallel tracks creates some efficiencies and benefits in each. Because both are assigned to the same Judge, pretrial issues can be handled relatively efficiently and with consistency to bring both to fair, just, and expeditious resolutions without unduly straining judicial resources.

### 6. Public Interest

To the extent the interests of the Court and the public do not overlap, the "public interest in effective criminal prosecution generally outweighs any existing civil interests." *United States Sec. & Exch. Comm'n v. Abdallah*, 313 F.R.D. 59, 61 (N.D. Ohio 2016). But, here, timely adjudication of both cases serves the public interest. If the cases result in liability, the public has an interest in punishing and deterring violations and vindicating the purposes of the securities laws, both civil and criminal. If the cases result in findings that Mr. Bongiorno and Mr. Arthur are not liable, the public has an interest in making such determinations promptly to protect their innocence and deter governmental investigations that lack merit. Additionally, the United States represents that it has not identified any prejudice to its prosecution of the criminal case necessitating a stay. For these reasons, the public interest counsels against a stay.

### 7. Fifth Amendment Rights

Additionally, courts consider "the extent to which the defendant's fifth amendment rights are implicated." *E.M.A. Nationwide*, 767 F.3d at 627–28 (citing *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995)). However, a

8

defendant "has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege." *Keating*, 45 F.3d at 325.

Defendants argue that in defending both cases, they "must choose whether to risk incrimination" or "invoke their Fifth Amendment and face the consequences of an adverse inference in the civil case." (ECF No. 45, PageID #323–24.) Therefore, Defendants argue that they "are placed in an impossible position to simultaneously defend themselves." (*Id.*, PageID #324.)

In response, the SEC argues that these reasons do not warrant a complete stay of this matter. (ECF No. 47, PageID #346–47.) It argues that any adverse inferences that might be drawn against Defendants from invocation of the Fifth Amendment in this matter do not work unconstitutional coercion. (*Id.*, PageID #347.) Further, the SEC argues that, adverse inferences are just one piece of evidence for a finder of fact and that it will still have to advance affirmative proof of Defendants' securities violations to prevail. (*Id.*, PageID #348.)

This factor weighs in Defendants' favor. Although each case has separate elements and different standards of proof, as both cases proceed Defendants face difficult choices about how to mount their defenses in each. That the law recognizes these choices are not unconstitutionally coercive does not change the balance of this factor. And a stay would "eliminate the risk that [Defendants'] Fifth Amendment privilege against self-incrimination might be undermined, that criminal discovery might be expanded beyond the limits of Rule 16(b), and that either side might

9

otherwise be prejudiced in advance of the criminal trial." *Abdallah*, 313 F.R.D. at 64–65.

### 8. Balance of Hardships

"The most important factor is the balance of the hardships." *E.M.A. Nationwide*, 767 F.3d at 627. In the Court's view, weighing the hardships does not involve merely tallying up in which direction each of the factors tip. Instead, the Court considers each of them separately and the record as a whole to weigh their relative strengths and applicability on the record of this case and *Spivak*.

On balance, the factors for and against a stay and the records of this case and *Spivak* do not favor a stay. Each case implicates important interests. Overall, the hardships resulting from a stay weigh more heavily against the public's interests—suggesting that a stay is not appropriate in this case. Further, the resulting burdens and hardships to Defendants from proceeding with this case, do not, under the law, rise to the level creating unconstitutional coercion. Finally, as noted at the outset, Defendants bear the burden "to show that there is a pressing need for delay." *E.M.A. Nationwide*, 767 F.3d at 627–28 (quoting *Ohio Env't Council*, 565 F.2d at 396). For all of their arguments, the Court cannot say the need for a stay here is pressing. Further, a stay must not cause the SEC or the public harm. *See Ohio Env't Council*, 565 F.2d at 396. And the Court cannot so conclude.

## CONCLUSION

For the foregoing reasons, the Court declines to exercise its discretion to stay this proceeding and, therefore, **DENIES** Defendants' motion to stay this civil matter pending resolution of the criminal charges in *Spivak*. Based on this ruling, the Court **DENIES WITHOUT PREJUDICE** Plaintiff's motion to continue the case management schedule (ECF No. 41) and **ORDERS** the parties to confer and to submit a proposed amendment to the schedule no later than April 6, 2022. If the parties are unable to agree on a joint proposal, the Court will enter the dates proposed in Plaintiff's motion to continue, which shall not be changed absent a showing of good cause.

**SO ORDERED.**

Dated: March 28, 2022

J. Philip Calabrese
United States District Judge
Northern District of Ohio